(79 South. 532)

No. 21525.

LOCAL UNION NO. 76 OF UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA v. UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA et al.

(May 27, 1918. Rehearing Denied June 29, 1918.)

*(Syllabus by Editorial Staff.)*

1. TRADE UNIONS &#9758;3 — ACCEPTANCE OF CHARTER.

In accepting a charter from the parent labor brotherhood, a local union did so subject to all the conditions on which it was granted as contained in the constitution and other laws of the brotherhood.

2. TRADE UNIONS &#9758;3—LABOR BROTHERHOOD—CONTROVERSY BETWEEN LOCALS—SETTLEMENT.

Controversies between local unions of a national labor brotherhood must be settled within the brotherhood by its tribunals in the modes provided for that purpose by its constitution and by-laws.

3. JUDGMENT &#9758;28—EXCESS OF JURISDICTION.

A judgment in excess of jurisdiction is not necessarily void in toto.

4. TRADE UNIONS &#9758;3—LABOR BROTHERHOOD—JUDGMENT AGAINST LOCAL UNION — RESORT TO COURTS.

Judgment of tribunal of labor brotherhood on charges of locals against another, not being null, so far as authorizing officers to sequester property of local, or as cutting off local members from brotherhood membership, until it could be reviewed on appeal, the local could not apply to the courts to arrest it or review it; that being a condition of its charter.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Suit by Local Union No. 76 of the United Brotherhood of Carpenters and Joiners of America against the United Brotherhood of Carpenters and Joiners of America and U. S. Berry. From judgment for defendants, plaintiff appeals. Affirmed.

A. J. Peters and Wm. H. Byrnes, Jr., both of New Orleans, and Wm. J. O'Hara, for appellant. B. B. Howard and Henry O. Hollander, both of New Orleans (Joseph O. Carson, of Indianapolis, Ind., of counsel), for appellees.

PROVOSTY, J. Two of the local unions of New Orleans brought charges against the plaintiff union before the general president of the brotherhood. After trial, the charter of plaintiff was revoked. Plaintiff appealed to the convention of the brotherhood. Meantime an official was sent from Indianapolis, Ind., the domicile of the brotherhood, to New Orleans to take charge of the property, charter, books, and funds of the plaintiff. Thereupon plaintiff brought this suit enjoining said official from interfering with its property or affairs, and enjoining the general officers of the brotherhood from carrying out the said sentence of revocation.

Plaintiff's grounds are that there is no authority under the constitution and laws of the order for the revocation of the charter of a local union, but only for the suspension of the local union; and that the effect of carrying out said sentence of revocation would be to put the members of plaintiff out of the brotherhood, and thereby deprive them of their means of earning a living and of the insurance and other benefits of their membership; and that the appeal to the convention would be an inadequate remedy, as the date for the meeting of the convention was distant.

[1] In accepting a charter from the parent

body, plaintiff did so subject necessarily to all the conditions upon which it was granted, as contained in the constitution and other laws of the brotherhood. Among these are the following:

"The right is reserved to the United Brotherhood to regulate and determine all matters pertaining to fellowship in its various branches and kindred trades.

"The right is reserved to establish jurisdiction over any local or auxiliary unions, district, state or provincial councils whose affairs are conducted in such a manner as to be a menace to the welfare of the international body.

"The general president shall decide all points of law, appeals and grievances, except death and disability claims, and have power to suspend any local union, district council, state council or provincial council for violation of the constitution and laws of the United Brotherhood subject to an appeal to the general executive board. Any local or auxiliary union, district council, state council or provincial council which willfully or directly violates the constitution, laws or principles of this United Brotherhood, or acts in antagonism to its welfare, can be suspended by the general president with the consent of the general executive board.

"Whenever, in the judgment of the general president, subordinate bodies or the members thereof are working against the best interests of the United Brotherhood, or are not in harmony with the constitution and laws of the United Brotherhood, the general president shall have power to order said body to disband under penalty of suspension.

"The general executive board shall decide points of law, all grievances and appeals submitted to them in legal form, and their decision shall be binding until reversed by the convention.

"To make laws governing auxiliary unions, until the general convention of the United Brotherhood, in 1916, and until the same are adopted by the referendum vote of the United Brotherhood.

"If at any time a local union should withdraw, lapse, dissolve, be suspended or expelled, all property, books, charter and funds held by, or in the name of, or on behalf of said local union must be forwarded immediately by express to the general secretary, to be held in safekeeping for the United Brotherhood as trustee for the carpenters in that locality until such time as they shall reorganize.

"The officers and members of said local union will be held responsible for compliance with the above section within thirty days after such dissolution, suspension, or withdrawal, under penalty of being prosecuted by law, and forfeiture of membership and donations in this United Brotherhood.

"A member of a lapsed or suspended local union if he is in good standing can take a clearance to the nearest local union in his vicinity, upon application to the general secretary, who shall issue same. Said clearance can be sent by mail to the nearest local union and can be accepted without requiring the personal attendance of the member."

The general president and the general executive board have interpreted these provisions as conferring authority to revoke a charter; and they, surely, were in a much better position than the civil courts can possibly be for knowing what is the true meaning or scope of these provisions. It will be noted that the third from last of the above transcribed paragraphs speaks of the expulsion of a local union. This would seem to be but another form of expression for revocation of charter. And it will be further noted that there are reserved to the brotherhood legislative powers, the extent of which is not fixed—to be exercised by the general executive board, which is a sort of legislature for the brotherhood, between the sessions of the convention.

[2] But if it be granted that there was no power to revoke a charter, what then? Plaintiff's learned counsel concedes, as he must, that controversies of this kind must be settled within the brotherhood, by the tribunals, and in the modes, provided for that purpose by the constitution and laws of the brotherhood; but he contends that there are exceptions to that rule, one such exception being where a judgment has been rendered by the brotherhood tribunals without jurisdiction, and no adequate remedy is afforded by the laws of the brotherhood against the effects of such judgment.

[3, 4] We readily concede that a judgment rendered without jurisdiction is null, or, legally speaking, no judgment; and that any attempt to enforce it may be arrested; and we may concede, also, that when such a null judgment has been rendered by the tribunals of a mutual benefit society, and the laws of the society afford no adequate remedy for arresting its effects, the civil courts may be

applied to for that purpose. But a judgment in excess of jurisdiction is not necessarily void in toto. On the principle that the greater includes the less, it may be valid in so far as within the jurisdiction and as such susceptible of execution. 23 Cyc. 682. Thus, where there was authority to pronounce only interlocutory judgment of separation, and the court entered a final decree of divorce, the judgment was good as an interlocutory decree. Grannis v. Superior Court, 146 Cal. 245, 79 Pac. 891, 106 Am. St. Rep. 23; Claudius v. Melvin, 146 Cal. 257, 79 Pac. 897. Especially must this conservative doctrine be held to be applicable to trials within fraternal organizations where the proceedings are conducted by laymen and necessarily are emancipated from all mere technical rules. Obviously, the substance alone need be looked to in such cases. Now, under the above-transcribed provisions, the effects of a judgment of suspension would be exactly and precisely the same as those of a judgment of revocation, so long as the suspension continued. As an effect of the suspension, the charter of the local union would be taken away from it, and its property sequestered, and the members would have to seek admittance into other local unions, precisely as in the case of a revocation of charter. The learned counsel for plaintiff says that with the clearance cards issued, or offered to be issued, to the members of plaintiff after this judgment of revocation, these members could have entered another local union only by permission of this other union, to be expressed by a majority vote of its members; but the same thing precisely is true with clearance cards issued after a judgment of suspension. The only provision we find relating to entrance into another local union upon a clearance card applies equally to cards issued on suspension. It reads:

"On entering a local union a member with a clearance card shall present his due book to the president, who shall appoint a committee of three to examine the applicant and his due book and report at once. If clearance card and due book are found correct, then a vote shall be taken, and if the majority of the votes are favorable he shall be admitted, except in case of strike or lockout, provided he qualifies in accordance with the district by-laws."

The said judgment not being null in so far as it operated to authorize the general officers of the society to take charge of the property, charter, books, and funds of the plaintiff, and in so far as it cut off the members of plaintiff from membership in the brotherhood until it could be reviewed on appeal, plaintiff was without ground to apply to the civil courts to arrest its operation, or to review it, but had to submit to it; such being one of the conditions on which plaintiff accepted its charter. And that was the conclusion reached by the trial court.

Judgment affirmed.

O'NIELL, J., takes no part.